## CHASE NAT. BANK OF CITY OF NEW YORK et al. v. SAYLES et al.

District Court, D. Rhode Island. September 9, 1927.

No. 198.

See, also, 6 F.(2d) 403.

Sherwood, Heltzen & Clifford and Hinckley, Allen, Tillinghast & Phillips, all of Providence, R. I., for plaintiffs.

Edwards & Angell, of Providence, R. I., and Samuel Williston, of Cambridge, Mass., for defendants.

MORRIS, District Judge. This is the same case once before the Circuit Court of Appeals, reported in 11 F.(2d) 948, 48 A. L. R. 207, remanded to the District Court.

It came on for hearing on motions of both plaintiffs and defendants on April 13, 1927. It was then argued orally, and since the oral arguments elaborate briefs have been filed by both sides.

The several motions before the court relate to procedure and forms of pleadings and are as follows:

(1) MacColl's motion for leave to file an amended answer.

(2) Mrs. Sayles' motion for leave to file amendment to answer.

(3) Motion of the plaintiff Rupprecht to strike out portions of the original answer of defendant MacColl.

(4) Motion of the Chase National Bank to strike out portions of the original answer of defendant MacColl.

(5) Plaintiffs' motion to deny defendants' motions for leave to amend their answers and to strike out amendments if filed.

(6) Plaintiffs' motion for further and better statement of the nature and particulars of defenses alleged in answer of defendant Mary D. A. Sayles.

(7) Plaintiffs' motion for extension of time for filing interrogatories.

(8) Defendants' motion for extension of time for filing interrogatories.

(9) Plaintiffs' motion for extension of time for filing replies.

There was one further motion of the plaintiff Chase National Bank to strike out portions of the answer of the defendant Mary D. A. Sayles which was called to the attention of the court. It was, however, stated in oral argument that this motion had been heard by Judge Brown, and that he had made an informal decision that the subject-matter of the motion be left until a final hearing was had upon the merits. I have not been urged to give this motion further consideration, and therefore have not done so. Counsel have agreed that an order may be made in accordance with Judge Brown's decision. I have signed the form furnished by counsel and herewith return the same.

The other motions, so far as contested, I have considered. They have been most ably argued, and present many perplexing legal questions.

Motion No. 1: "MacColl's motion for leave to file an amended answer."

After the case was remanded from the appellate court, the defendant MacColl, filed on November 10, 1926, an answer in which paragraphs 12 and 13 thereof set forth matter in the nature of counterclaims to the plaintiffs' bill of complaint. On December 30, 1926, defendant MacColl asked leave to amend his answer filed November 10, 1926. A motion to strike out paragraphs 12 and 13 of the original answer was pending when the motion to amend was filed. This motion to strike out was filed November 19, 1926. As the material changes inserted in the amended answer are in the nature of additions to the original answer, it seems the better practice in this instance to allow the defendant's motion to amend, and deal with the problems presented in the answer in its final amended form.

Defendant MacColl's motion to amend his original answer, filed November 10, 1926, by the amendment offered December 30, 1926, is granted.

Motion No. 2: "Mrs. Sayles' motion for leave to file amendment to answer."

This motion was not opposed by plaintiffs' counsel, and is therefore granted.

Motions 3, 4, and 5: (3) "Motion of the plaintiff Rupprecht to strike out portions of the original answer of defendant MacColl."

(4) "Motion of Chase National Bank to strike out portions of the original answer of defendant MacColl."

(5) "Plaintiffs' motion to deny defendants' motions for leave to amend their answers, and to strike out amendments if filed."

These three motions may now be considered together. The allegations contained in the parts of the amended answer to which objections are made, and to which the motions to strike out are directed, set forth in substance the following matters of defense, and are contained in paragraphs 12, 13, 14, and 15 of the amended answer.

In paragraph 12 the defendant MacColl avers that Frank A. Sayles during his lifetime loaned to the plaintiff Rupprecht the sum of $450,000, no part of which has been repaid by the plaintiff Rupprecht, and that on May 27, 1921, the plaintiff Rupprecht and the executors entered into an agreement in writing, a copy of which is annexed to the defendant's amended answer, whereby it was provided that the said Rupprecht should pay to said executors the sum of $450,000 three years from March 9, 1921, with interest at the rate of 6 per cent. per annum, payable semiannually, and that upon default in the payment of interest at any time for a period of 60 days after such interest became due the whole amount remaining unpaid should become due and payable. As collateral for the payment of said sum of $450,000, certain policies of insurance upon the life of Rupprecht were assigned to the executors. It is alleged that on May 31, 1922, said Rupprecht notified said executors in writing that he repudiated all liability under said agreement. It is further alleged that on June 2, 1922, said executors notified Rupprecht in writing that, under the provisions of said agreement, said principal sum of $450,000 was due and payable and immediate payment was demanded.

Paragraph 13 of defendant MacColl's amended answer also relates to the alleged debt of $450,000, due and owing from Rupprecht to the estate. In addition to the allegations contained in paragraph 12, it is alleged on information and belief that, at the time of making the assignment of the $1,500,000 interest in the Mary D. A. Sayles legacy by Rupprecht to the plaintiff bank, Rupprecht was insolvent, and that he is still insolvent, and that the bank had knowledge

of such insolvency, or of such facts that it was put upon inquiry which, if pursued by it, would have disclosed the existence of the claim of said executors against said Rupprecht and would have disclosed his insolvency.

Paragraph 14 of MacColl's amended answer alleges in brief that the deceased was the owner of all the capital stock of a New York corporation known as the Kelsey Textile Corporation, and that the plaintiff Rupprecht was the trusted agent of the deceased, and held the record title of all of its capital stock; that he was its president, treasurer, and one of its three directors; that he voted the Sayles stock standing in his name, and that he had the actual management and control of all its affairs. There are also allegations respecting the formation of a new Kelsey corporation, that took over all the capital stock of the old corporation, on or about October 18, 1921. It is alleged that Rupprecht had practically the same relations with the new as with the old corporation. It is further alleged that Rupprecht was also the virtual owner and manager of another corporation called Converse & 'Co., with which the Kelsey Corporation had financial connections, and that on divers times, between the organization of the old Kelsey Corporation and October 18, 1921, the plaintiff Rupprecht in divers ways breached and violated his duty and obligation, and wasted the funds and assets of the Kelsey companies, and diverted the funds and assets to his own use, benefit, and profit, and to the use, benefit, and profit of said Converse Company, so that the stock of said Kelsey companies became greatly depreciated in value, and the said Sayles and the executors of his will, as the beneficial owners of said stock, and as the beneficiaries of said trust, and as the principals of said Rupprecht, suffered severe losses. After setting forth the fiduciary relations between plaintiff Rupprecht and the deceased, and executors of the deceased, the answer sets forth the various ways in which plaintiff Rupprecht breached his trust. It is alleged that, as a result of the wrongful acts of the plaintiff Rupprecht, said Kelsey Company suffered losses aggregating more than $1,000,000. It is further alleged that such breaches of trust and violations of duty by Rupprecht were not discovered by said executors until an investigation of the accounts and records of the Kelsey company were instituted in the fall of 1921.

In paragraph 15 of the amended answer it is alleged on information and belief that the Chase National Bank had knowledge of such breaches of trust and violations of duty on the part of the plaintiff Rupprecht, and of Rupprecht's insolvency, or had knowledge of such facts that it was put upon inquiry.

The defendant has set up two separate defenses, in the nature of counterclaims, viz. a claim for $450,000, and another for breach of Rupprecht's fiduciary duties, by which the estate was damaged to a large amount. Plaintiffs move to strike out all of the allegations relating to these two alleged defenses.

The first ground urged by the plaintiffs in support of their motion to strike out is that, under federal equity rule 30, the allegations set forth counterclaims inadmissible, because neither of them could be the subject of an independent suit in equity.

Of course, there is at the threshold of the entire case the primary question of the right of Mrs. Sayles to repudiate the assignment to Rupprecht and its effect upon the bank as assignee of Rupprecht. If Mrs. Sayles establishes her allegations of fraud and a right to repudiate her assignment to Rupprecht, and the assignment from Rupprecht to the bank is held void because of any lack of title or interest in Rupprecht upon which it can operate, then both of the alleged counterclaims as defenses to the action become immaterial.

But if Mrs. Sayles is estopped from repudiating her assignment to Rupprecht by reason of his subsequent assignment to the bank, or if she fails to establish her allegations of fraud, then the defenses set up by the defendant MacColl may become very material. It seems to me that the first question of estoppel is a mixed question of law and fact, that may depend upon whether the bank was an innocent purchaser for value, or whether it had notice of such facts as should have put it upon inquiry. If the right to repudiate the assignment is dependent upon establishing fraud, then most, if not all, of the issues presented by the so-called counterclaims must be tried out in determining the issues presented in the answer of Mrs. Sayles. In either event, material questions of fact which lie at the threshold of the case are presented by her answer.

■ The Circuit Court of Appeals has determined that the plaintiffs' interest in the legacy is an equitable interest. It follows that it is properly the subject of a suit in equity. It is a primary rule in equity that, if equitable jurisdiction is once established, it will retain jurisdiction of the case to ad-

182

just all the rights of the parties. Camp v. Boyd, 229 U. S. 530, 531, 33 S. Ct. 785, 57 L. Ed. 1317.

It is alleged in the answer that the defendant Rupprecht, at the time of his assignment to the bank, was and still is insolvent, and that the bank had notice of his financial condition. Assuming that the bank's position is no stronger than Rupprecht's, if plaintiffs are entitled to a decree against the executors for the payment of $1,500,000 in this suit in equity, and the executors are barred by a rule of court from asserting a counterclaim or right of retainer against Rupprecht, then we would have the anomalous situation of one being compelled in equity to pay his debtor, when his debtor is owing enough to offset the amount paid and is hopelessly insolvent and cannot pay. The statement of such a contention refutes its equities. If, as alleged, Rupprecht is insolvent, equity will not require the estate or its executors to pay him $1,500,000, if he owes the estate that much or more. If, because of rule 30, the defendant is barred in equity from asserting a claim on behalf of the estate against Rupprecht for $450,000, because Rupprecht denies the claim and has a right of trial by jury, equity requires that an issue be framed, that it be transferred to the law side of the docket, not for the purpose of "enlightening the conscience of the chancellor," but that a trial by jury may be had to establish defendants' rights at law. In that event the equity case should be held in abeyance until such rights are established. See Act March 3, 1915, Comp. Stat. 1251a (28 USCA § 397).

The second ground of defense, which seeks a determination of damages in terms of money only, as distinguished from some equitable relief, may also offend rule 30, considered as a counterclaim. In any event, it does not make a case for a jury, except as outlined in Fenno v. Primrose (C. C. A.) 119 F. 801. But these are questions of procedure, that must be determined by the trial judge. My ruling is directed only to the questions before me, viz. the motions to strike out.

Assuming, but not deciding, that Rupprecht is entitled to a jury trial respecting the matters of defense set forth in MacColl's amended answer, it does not follow under the peculiar circumstances of this case that the plaintiffs' motions should be granted. Equity rules are promulgated to do equity, not to defeat it. If defendant's position as to the right of retainer is sound, then the matters set up in defendant's answer should stand as defenses to plaintiff's right of action, rather than be treated as counterclaims, within the meaning of that term as used in rule 30. If the allegations of the answer are established, a court of equity must by decree make their application, and they should stand as a basis for the court's action. It would be useless to strike out the defenses upon the theory that, if they were established at law, they might be restored. It is suggested that, if the matters set up in defense allege no causes of action against Rupprecht, they should be struck out. This contention, of course, impels the court to further examine the several points raised in the plaintiff's argument.

Point 2, raised in the plaintiff's brief, is as follows:

"The only relief sought by the bill against Mr. MacColl, is in his representative capacity as executor. His first and second counterclaims are based upon the instrument set forth in Exhibit B of his answer. Since any rights possessed by him thereunder are individual or personal to him, they cannot be made the basis of a counterclaim in this suit."

It seems to me that the plaintiffs fail to distinguish between money and claims growing out of contracts made by the deceased in his lifetime, on which the executors are attempting to realize, and contracts not existent at the death of the testator. The former are personal to the estate, and the latter are personal to the executor. Ferrin v. Myrick, 41 N. Y. 315; O'Brien v. Jackson, 167 N. Y. 31, 60 N. E. 238.

Point 3, raised in the plaintiffs' brief is as follows:

"Even though the counterclaim might have been asserted against Rupprecht while he held the interest in the legacy, it cannot be asserted against the plaintiff bank, because an assignee does not take subject to a set-off against an intermediate assignee but only subject to a set-off against the original assignor."

The order for $1,500,000 is not a negotiable instrument. It was taken subject to such defenses as existed between Mrs. Sayles and Rupprecht. If it should be established that the order was obtained by fraud, and was therefore invalid, MacColl's defenses under consideration would be treated as surplusage. But if Mrs. Sayles fails for any reason to maintain the allegations set forth in her answer, and the $1,500,000 becomes payable as a part of her legacy, then the defenses become of importance. It seems to me immaterial whether they are denominated in the pleadings set-off, counterclaims, or a

right of retainer. The pleadings clearly allege claims of the estate against Rupprecht, which the defendant MacColl says, under the doctrine of retainer, he has a right to retain out of any sum payable to a legatee. I cannot see how Rupprecht stands in any better position than if he were an original legatee under the will. His claim against the estate is purely an equitable interest. It is not founded on any contractual relation between him and the deceased, or with the executors of the deceased. It is said: "The right of retainer rests, not so much upon any rule of set-off or retainer, as upon the broad principles of equity." It is a "right to pay out of the funds in hand." Oxsheer v. Nave, 90 Tex. 568, 40 S. W. 7, 37 L. R. A. 98; Webb v. Fuller, 85 Me. 443, 27 A. 346, 22 L. R. A. 177.

■ If the right of retainer exists, the assignment to the bank could transfer only so much of $1,500,000 as remained after deducting Rupprecht's indebtedness to the estate. Armour v. Kendall, 15 R. I. 193, 2 A. 311; Harvey v. White, 46 R. I. 470, 129 A. 263.

■ The theory of set-off governing ordinary choses in action as between assignor and assignee is not applicable to the right of retainer. Keim v. Muhlenberg, 7 Watts (Pa.) 79; Smith v. Kearney, 2 Barb. Ch. (N. Y.) 533; In re Flint's Estate, 120 Misc. Rep. 230, 198 N. Y. S. 190. And, independent of the right of retainer, the equities of the parties might be governed by Rupprecht's insolvency and the bank's knowledge. Perry v. Mays, 2 Bailey (S. C.) 354.

■ Point 4, raised in the plaintiffs' brief, is as follows:

"The debtor cannot set off against an assignee a claim immature at the time of the assignment."

The right of retainer exists, even though the debt of the legatee is unliquidated. In re Flint's Estate, 120 Misc. Rep. 230, 198 N. Y. S. 190.

■ Point 5, raised in the plaintiffs' brief, is as follows:

"The general allegation of Rupprecht's insolvency contained in MacColl's proposed amended answer and knowledge thereof or of facts sufficient to put the plaintiff bank upon inquiry present no equity which should prevent the application of the rules hereinbefore asserted."

If a debtor has become insolvent, so that it is impossible for him to satisfy his creditors, the rule applied in the United States courts is that the claims of the debtor and creditor will be balanced, whether or not due,

and only the excess be required to be paid. But the right of retainer between executors and legatees exists independent of the allegations of insolvency. In re Baily's Estate, 156 Pa. 634, 27 A. 560, 22 L. R. A. 444.

■ Another point raised by the plaintiffs in their briefs is as follows:

"Neither the third nor the fourth counterclaim contained in the proposed amended answer of the defendant MacColl alleges a cause of action in his behalf, but each alleges a cause of action inherent in the new Kelsey Textile Corporation."

It appears to the court that the defendant MacColl has fairly set forth facts showing a fiduciary relation existing between Sayles and Rupprecht with reference to the Kelsey Textile Corporation and stock. Considering plaintiff's contention that a stockholder cannot maintain an action in his individual capacity against an officer of the corporation for damages resulting from a breach of the officer's duty to the corporation, nevertheless, if contractual or fiduciary relations exist between the stockholder and officer, they may furnish the foundation for an action. An individual right of action can arise only from some private relation, contractual or fiduciary, as distinguished from a purely corporate relation common to all stockholders. While defendants' answer alleged damage to the Kelsey Corporation and depreciation of its corporate stocks, which, standing alone, would not furnish the foundation for an individual suit, facts are alleged which show an independent fiduciary relation between the deceased and Rupprecht, which, if violated by Rupprecht, may furnish the foundation for an individual suit. The general rule, that the right to sue for a wrong to a corporation is in the corporation, does not conflict with or limit the rule that, where there is a duty arising from contract or otherwise, owing directly from the officer to the injured stockholder, the latter may recover damages for acts which are violations of that duty, although such acts are also violations of the duties owing to the corporation. Ritchie v. McMullen (C. C. A.) 79 F. 522.

In a supplementary memorandum, filed on behalf of the plaintiff, it is said: "We are seeking here to establish the right to the legacy, not necessarily to require its present payment. * * * If, as the result of the decree herein, the executor refuses to pay the portion of the legacy involved it will be necessary for the bank to assert its rights so adjudicated in the Rhode Island courts, whereupon, if the executor has any right of retainer, or any other equitable right, * * *

full opportunity will then be afforded him to assert it."

At the first reading this appeared to be a reasonable solution of the question, but, when I examined paragraph 3 in the prayer of the bill, I found the following language: "That the validity of said assignment now held by the plaintiff the Chase National Bank of said interests in and to said $4,000,000 legacy, to the extent of $1,500,000, be determined, and that, if the court shall determine that the proper administration of said estate does admit of such present payment, the said executors be required to pay said sum with lawful interest thereon to the Chase National Bank."

■ The plaintiffs have brought all parties into court. Whatever decrees are made will run against the executor personally. Chase National Bank v. Sayles (C. C. A.) 11 F. (2d) 948, 48 A. L. R. 207; Allen v. United States (C. C. A.) 285 F. 678, 683. It therefore seems to me the argument that the plaintiffs are only attempting to establish the right to the legacy is not in accord with the prayer of their bill. Moreover, as the decree is personal against the executor, the plaintiffs' right cannot be finally established against the executor until he has had his day in court and an opportunity to defend.

A decree against the executor, that he pay the Chase National Bank the sum of $1,500,000, unless it shall be made to appear to the court that he can successfully defend against such payment, would be an anomaly in law, and would not even establish what the plaintiff is seeking, namely, the right to the legacy.

Other grounds supporting the plaintiffs' motion to strike out have been discussed in the briefs and have been considered. All of them appear subsidiary to the main contentions hereinbefore discussed, and do not require further special consideration. Plaintiffs' motions numbered 3, 4, and 5, are denied.

Motion numbered 6: "Plaintiffs' motion for further and better statement of the nature and particulars of defenses alleged in answer of defendant Mary D. A. Sayles."

This motion is made in behalf of both plaintiffs under federal equity rule 20, which provides that "a further and better statement of the nature of the claim or defense, or further and better particulars of any matter stated in any pleadings may in any case be ordered upon such terms as to costs and otherwise as may be just."

It is not claimed in argument that Mrs. Sayles' answer is defective in substance.

The motion is directed to securing further details of her defense as to time, place, and manner of making the false representation alleged in her answer, and the name or names of persons to whom such representations were made.

■ I have examined the answer and briefs of counsel with considerable care, and it appears to me that the answer is more than ordinarily informative as to the issues raised therein, and that the plaintiff's motion is directed in the main to obtaining a disclosure of the evidence in support of the allegations in the answer and the names of defendant's witnesses. Evidence and names of witnesses have no legitimate place in pleadings. The motion, except as hereinafter stated, is denied. Curtis v. Phelps (D. C.) 209 F. 261, 263; Green v. Delaware L. & W. R. Co. (D. C.) 211 F. 774; Gimbel Bros., Inc., v. Adams Express Co. (D. C.) 217 F. 318.

■ Subparagraph (j) of paragraph 12, in Mrs. Sayles' answer contains an omnibus allegation in the following language:

"As was disclosed by said investigation, plaintiff Rupprecht at divers times between on or about December 31, 1913, and September 15, 1920, as well as thereafter, in many other respects too numerous to set forth in detail, breached and violated his duty as director and officer of said first named Kelsey Textile Corporation."

This is too indefinite. If defendant claims anything under this allegation, it should be made more specific; otherwise, it should be treated as surplusage. Defendant, if so advised, may file further particulars as to matters relied on under this omnibus allegation within 20 days from the filing of this order; otherwise, the allegation in the answer will be struck out or treated as surplusage.

Motion numbered 7: "Plaintiffs' motion for extension of time for filing interrogatories."

This motion is granted, the length of time to be determined by the judge now sitting in the district.

Motion numbered 8: "Defendants' motion for extension of time for filing interrogatories."

This motion is not opposed, and the same order is made as in No. 7.

Motion numbered 9: "Plaintiffs' motion for extension of time for filing replies."

This motion is not opposed, and is granted, the time to be fixed by the presiding judge in the district.

My rulings on the several motions are directed to the matters before me, and are not

made upon any consideration of the merits of the case, or intended to embarrass the court upon trial of the main issues.

Let the orders in the several motions be entered in accordance with the foregoing.