In re Joseph J. INFANTOLINO, Susan
D. Infantolino, Debtors.

Peter SMITH, Plaintiff,

v.

Joseph J. INFANTOLINO, Susan D.
Infantolino, Defendants.

Bankruptcy No. 8000410.
AP No. 800176.

United States Bankruptcy Court,
D. Rhode Island.

Oct. 18, 1982.

Marvin Homonoff, Kirshenbaum & Kirshenbaum, Attorneys At Law Inc., Providence, R.I., for debtors.

Russell D. Raskin, Andreoni & Raskin, Providence, R.I., for plaintiff.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Plaintiff's complaint to determine the dischargeability of a debt, and on his objection to the discharge of both Debtors.

In October 1977, Peter Smith and Joseph J. Infantolino formed a corporation known as Quonset-Davisville Flight Center, Inc. Joseph Infantolino was president and treasurer, and Peter Smith was vice president and secretary. Each owned fifty percent (50%) of the stock. The business operated a flight school and also sold new and used aircraft.

Joseph and his wife Susan Infantolino filed a joint Chapter 7 petition on June 10, 1980.[1] Thereafter, Smith filed the instant complaint: (1) to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2) and (a)(4); (2) objecting to discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and (a)(5); and (3) to determine whether Infantolino should be held personally liable for certain debts incurred by Quonset-Davisville Flight Center, Inc.

The Plaintiff, of course, has the burden of proof generally and must prove each allegation concerning fraud through clear and convincing evidence. *Newton v. Fontaine (In re Fontaine),* 14 B.R. 10, 11 (Bkrtcy.D.R.I.1981); *See also Murphy & Robinson Investment Co. v. Cross (In re Cross),* 666 F.2d 873 (5th Cir.1982). The record established by both parties is confusing and disorganized, and presents a most difficult situation to the Court for determination.

The factual issues upon which Smith's complaint is based (as outlined in the joint pre-trial order) appear below, followed im-

---

1. The Plaintiff's "Complaint Objecting to Discharge" inconsistently refers to the Debtor as (1) Joseph Infantolino, and (2) Joseph and Susan Infantolino. Because most of the Plaintiff's allegations do not pertain to Susan Infantolino, references herein to "the Debtor," "the Defendant," and "Infantolino" are to Joseph Infantolino, except where otherwise indicated.

mediately by the Court's finding and/or conclusion with respect to each:

1. Whether the Defendant had authority to execute the Plaintiff's signature on a document in connection with a loan obtained from the Quonset Point Credit Union. Yes.

2. Whether the parties agreed to pay the Defendant's father, Salvatore Infantolino, for referring students. Yes.

3. Whether the Debtor made any improper payments or loans to relatives. No.

4. Whether the Plaintiff authorized the Defendant to operate the day-to-day management of the corporation without consulting the Plaintiff. Yes.

5. Whether the Defendant issued certain corporate checks without Smith's knowledge or consent. No.

6. Whether the Defendant issued a $500 check in the Plaintiff's name, endorsed the check, and converted the funds. No.

The following is a brief resume of the evidence upon which the above findings and conclusions are based.

The Plaintiff, Smith, testified that Infantolino obtained a loan from the Quonset Point Credit Union and affixed his (Smith's) signature to the note, without Smith's knowledge or consent. Infantolino, however, testified that he and Smith discussed in detail the need to purchase a flight simulator, charts, plotters, calculators, and other accessories, and that Smith gave Infantolino oral authorization to sign the note and financial statements necessary to obtain the funds to purchase these items. Infantolino's version of this aspect of the case is accepted. It is highly likely that such a discussion did take place, the loan was clearly for business purposes, and there is no evidence that the proceeds were used for other than the specified corporate purposes for which the loan was obtained. Even without specific proof of such an agreement, the record in this proceeding supports the finding that Infantolino was

acting within the scope of his implied authority to act in behalf of the corporation.

With respect to any funds received by Salvatore Infantolino from the corporation, I find that no improper or unauthorized payments were made to the Debtor's father. Salvatore Infantolino earned finder's fees by locating and recommending potential students to the flight school. He also obtained several cash loans from the corporation for his own business purposes. The loans were made first with Smith's explicit consent, and later with Smith's knowledge, without objection.

The record discloses no improper or unauthorized payments to the Debtor's wife, Susan Infantolino. Rather, the evidence indicates that the questioned checks to Susan were reimbursements for: (1) art materials, Christmas gifts for employees, and Christmas party supplies purchased by Susan Infantolino for the corporation; (2) other expenditures related to the business of the corporation; and (3) deferred commissions earned by the Debtor.[2] Smith has not demonstrated that any withdrawals from the corporate checking account, or that the expenses incurred, were not proper. The Debtor issued the checks in question to his wife as reimbursements for expenditures on behalf of the corporation, and they appear to be reasonable and necessary.

Infantolino clearly had authority to conduct the daily operation of the business. Smith testified that he devoted 80–90 hours a week to his laundromat business, leaving little or no time for flight school matters. This supports the Debtor's contention that he had authority generally to run the business. Furthermore, Infantolino brought all the expertise and contacts to the enterprise. Smith supplied the start-up funds, but had little knowledge of the aviation business in which he had invested.

Smith's consent to Infantolino's running of the business impliedly and necessarily includes the authority to issue corporate

---

2. Although the Debtor's method of deferring or shielding income might be of interest to the Internal Revenue Service, it has not been

shown that Infantolino's actions with respect to the corporation were improper or fraudulent.

checks in payment of business expenses as incurred. Although the corporate bylaws require checks to be signed by both Smith and Infantolino, neither party was aware of the requirement, and neither was in the habit of observing that requirement.

Despite Smith's contention that he never received information about business activity, the evidence establishes that he always had access to the corporate records, and that he actually took physical possession of all the records when he realized that the business was in difficulty.

■ Both parties conducted corporate business in an informal manner, especially with respect to withdrawing cash and recording expenses; and Smith's present demand—but made with hindsight—that Infantolino now be held accountable for failing to comply strictly with the bylaws, is rejected. By their conduct while the business was operating, the parties have all waived their rights to require now that things should have been done in a more businesslike manner.

After April 1979, the condition of the corporation deteriorated for various reasons, including inefficient bookkeeping, failure to record expenses, and the Plaintiff's own personal withdrawal of corporate funds, when he discovered the corporation's worsening financial situation.

With respect to the $500 check made payable to the Plaintiff (Plaintiff's Exhibit 2), I find that Infantolino cut, endorsed, and cashed that check under Smith's direction and turned the proceeds over to Smith. Indeed, there is no basis for a finding of forgery by Infantolino as to any transaction involving Smith or the corporation, largely because each party had either implied or express authority to sign the other's name, individually or in behalf of the corporation.

**3.** *§ 727. Discharge*

(a) The court shall grant the debtor a discharge, unless—

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

Maurice O'Brien generally corroborated the testimony of Joseph Infantolino in all important respects.

## DISCHARGEABILITY OF DEBT

■ 11 U.S.C. § 523(a) establishes several exceptions to the discharge of a particular debt, and provides in pertinent part:

§ 523. *Exceptions to discharge.*

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—

. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

Based upon the record and the findings on pp. 669–670 *supra*, Smith has failed to establish by clear and convincing evidence that Infantolino obtained money or property from Quonset-Davisville Flight Center through any conduct which would render the debt in question nondischargeable pursuant to § 523(a).

## OBJECTION TO DISCHARGE

Smith's complaint objecting to discharge pursuant to 11 U.S.C. § 727(a)(4)(A) and (a)(5) is also denied.[3] After examination of all the evidence, I conclude that Infantolino did not knowingly or fraudulently make any materially false oaths or accounts. Further, the Debtor has satisfactorily answered the Plaintiff's allegations with respect to improper use of corporate assets, and discrepancies in the records of Quonset-Davisville Flight Center, Inc.

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . .

There is an additional principle requiring dismissal of this case. The issues raised by Smith are based upon Infantolino's duty to the corporate entity.[4] Any cause of action resulting from a breach of such duty accrues to the corporation.

> An individual right of action can arise only from some private relation, contractual or fiduciary, as distinguished from a purely corporate relation common to all stockholders.... [T]he right to sue for a wrong to the corporation is in the corporation....

*Chase National Bank v. Sayles,* 30 F.2d 178, 183 (D.R.I.1927). *See also Index Fund, Inc. v. Hagopian,* 417 F.Supp. 738, 745 (S.D.N.Y. 1976); *Johnson v. American General Insurance Co.,* 296 F.Supp. 802 (D.D.C.1969). Under these cases, any action must be brought in the corporate name or as a shareholder's derivative suit. The corporation is not a party to this proceeding, and Smith has not met the requirements of Fed. R.Civ.P. 23.1[5] relating to derivative actions by shareholders; so this action cannot be maintained on a derivative theory.[6]

Finally, there is no evidence that Susan Infantolino was involved in any fraudulent activity with respect to the operation of the corporation.

For all the foregoing reasons, the Plaintiff's complaint is dismissed as to both Defendants. Enter judgment accordingly.

---

4. Smith had neither alleged in his complaint nor demonstrated at the trial that Joseph Infantolino owed *him,* as distinguished from the corporation, a fiduciary duty.

5. Rule 23.1. *Derivative Actions by Shareholders.* In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have....

6. The possibility of dissolution of the corporation (because it is inactive) does not automatically qualify the Plaintiff, in his individual capacity, as a proper party. R.I.Gen.Laws § 7–1.1–98 provides that derivative actions can be maintained in the corporate name for two years after dissolution. The present complaint was filed within that two-year period during which a derivative suit would be the appropriate procedure.