Michael BISZKO, Jr., and the David F. Bolger Revocable Trust, Plaintiffs

v.

RIHT FINANCIAL CORPORATION, Alden M. Anderson, John J. Carey, Malcolm G. Chace, III, Norman M. Fain, Donald C. Freeman, Jr., Clarence H. Gifford, Jr., Paul F. Hartz, Donald A. Roach, John W. Wall, John C.A. Watkins, Henry S. Woodbridge, Jr., The Rhode Island Board of Bank Incorporation, Dennis Roberts, 2d, as a member of The Rhode Island Board of Bank Incorporation, Anthony Solomon, as a member of the Rhode Island Board of Bank Incorporation, and William Carroll, as a member of the Rhode Island Board of Bank Incorporation, Defendants.

Civ. A. No. 84-0071 B.

United States District Court,
D. Rhode Island.

June 12, 1984.

William A. Harvey, Edward S. Ellers, Ronal J. Rosen, Philadelphia, Pa., Milton Stanzler, Providence, R.I., for plaintiffs.

Edwards & Angell, Joseph Cavanagh, Jr., Jeffrey Schreck, Providence, R.I., Sullivan & Cromwell, Theodore Rogers, David Tolchin, New York City, for defendants RIHT Financial Corp., Alden M. Anderson, John J. Carey, Malcolm G. Chace, III, Norman M. Fain, Donald C. Freeman, Jr., Clarence H. Gifford, Jr., Paul F. Hartz, Donald A. Roach, John W. Wall, John C.A. Watkins, and Henry S. Woodbridge, Jr.

Thomas H. Caruolo, Sp. Asst. Atty. Gen., Providence, R.I., for defendant Dennis Roberts, 2d.

Lawrence Iacoi, Dept. of Business Regulation, Providence, R.I., for defendants Rhode Island Bd. of Bank Incorporation, Anthony Solomon and William Carroll.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

Plaintiffs in this action are stockholders of defendant Rhode Island Hospital Trust Financial Corporation (RIHT Co.), a Rhode Island bank holding company. They have brought suit pursuant to 28 U.S.C. Section 2201 seeking a declaratory judgment that Chapter 201 of the Public Laws of Rhode Island, entitled "An Act Relating to Acquisitions of Financial Institutions," codified in part as R.I.Gen.Laws Sections 19–30–1 and 19–30–2, is unconstitutional. Specifically, plaintiffs challenge the provisions of the act which for a period of two years limit acquisitions of Rhode Island financial institutions to companies whose principal place of business is in another New England state and which are not controlled directly or indirectly by another company whose operations are conducted principally outside New England. Plaintiffs also request a permanent injunction preventing a contemplated merger between RIHT Co. and Bank of Boston Corporation (BBC), a Massachusetts bank holding company, and enjoining state officials from enforcing R.I. Gen.Laws Sections 19–30–1 and 19–30–2. Plaintiffs incorporate into their complaint claims for breach of fiduciary duty against the directors of RIHT Co.

Defendants have moved to dismiss plaintiffs' complaint for lack of standing. A hearing was held before the magistrate who recommended, pursuant to 28 U.S.C. Section 636(b)(1)(B), that the action be dismissed. Plaintiffs objected to the magistrate's report and recommendation and the matter is now before this court.

## FACTS

Interstate banking is regulated on both the federal and state levels. The Bank Holding Company Act of 1956, 12 U.S.C. Section 1841 *et seq.*, is the major piece of federal legislation in the field. The Douglas amendment, adopted in 1956, 12 U.S.C. Section 1842(d), prohibits the Federal Reserve Board from approving any application by a bank holding company for acquisition of a bank located in another state unless the state of the target bank has authorized such an acquisition. Hence, the Douglas amendment raises a hurdle surmounted only through state legislative action.

At its January, 1984 session the Rhode Island legislature passed Chapter 201 of the Public Laws of Rhode Island. This act, which becomes effective July 1, 1984, lowered the hurdle to interstate bank acquisitions in Rhode Island, but did not dismantle it entirely. The act institutes a two-step introduction of interstate bank acquisitions to Rhode Island. From the effective date until July 1, 1986, out-of-state bank holding companies with their principal place of business in New England and not controlled or owned by companies which operate principally outside New England may acquire direct or indirect control or ownership of more than five percent of the voting stock of one or more Rhode Island banks or bank holding companies. On July 1, 1986 bank holding companies from other states may make such acquisitions. From July 1, 1984 to July 1, 1985 any acquisitions are contingent upon three conditions being met; (1) The laws of the state in which the out-of-state bank is located must allow Rhode Island bank holding companies and banks to acquire more than five percent interest in banks and bank holding companies in that state under terms "no more restrictive" than those imposed by Rhode Island law. R.I.Gen.Laws Section 19–30–2(a)(i). (2) The acquisition must be approved by at least two-thirds of the outstanding voting stock of the target bank, or a greater percentage if called for by the by-laws or articles of incorporation. Alternatively, the acquisition must be approved by at least eighty percent of the board of directors of the Rhode Island company. R.I.Gen.Laws Section 19–30–2(a)(ii). (3) Any acquisition must have prior approval of the state board of bank incorporation. R.I.Gen.Laws Section 19–30–2(a)(iii).

On July 1, 1985 the above restrictions, with the exception of reciprocity, are lifted. If, however, the directors of a target corporation certify that the acquisition may not

serve the public interest the acquisition must receive prior approval of the board of bank incorporation. R.I.Gen.Laws Section 19–30–2(b).

To date three other New England states have passed statutes authorizing interstate bank acquisitions. The Connecticut law, Public Act 83–411, and the Massachusetts statute, Mass.St.1982, chapter 626, both contain regional restrictions which, unlike under the Rhode Island statute, continue in perpetuity. The Maine statute, Me.Rev. Stat.Ann.Tit. 9–B Section 1013(2) (1975, effective January 1, 1978) (amended 1983) contains a reciprocity provision but no geographic limitation.

On December 1, 1983 RIHT Co. and BBC entered into an agreement for BBC to purchase all RIHT Co.'s outstanding stock. The acquisition agreement, which cannot be effected before July 1, 1984 and is contingent on several conditions, was signed on February 10, 1984. The agreement is conditioned upon receipt of 1) necessary approval of both parties' shareholders, 2) approval by regulatory agencies, 3) execution of a definitive merger agreement, 4) absence of a suit by any government body to restrain the merger, and 5) absence of any judgment, order or decree outstanding, imminent or likely against the merger. Plaintiffs filed suit on February 15, 1984. RIHT Co.'s shareholders approved the acquisition in mid-May of 1984.

## DISCUSSION

■ Plaintiffs, in order to have standing, must demonstrate a distinct and palpable injury that is fairly traceable to the challenged conduct. *Duke Power Company v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). They must also show that the relief requested will redress the injury

claimed. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *see also N.A.A.C.P., Boston Chapter v. Harris*, 607 F.2d 514 (1st Cir.1979); *Women's Medical Center v. Roberts*, 512 F.Supp. 316 (D.R.I.1981). Defendants argue vigorously that plaintiffs have failed to meet any of the prongs of the standing test and each aspect will therefore be addressed in turn.

■ Plaintiffs argue that R.I.Gen. Laws Section 19–30–1 and 19–30–2 limit the extent and nature of tender offers for the stock of RIHT Co. and thus create an artificial price ceiling for their stock. They allege that they have been injured by the alleged limiting of the potential pool of acquirors.[1] As circumstances now exist, the Rhode Island statute limits bidders to financial institutions located in Connecticut, Massachusetts or Maine. Financial institutions located in other states are barred from bidding. For purposes of a motion to dismiss the court must take plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). While plaintiffs are not required to prove their case at this point, broad allegations of speculative injury will not suffice. Where the injury and its cause are not obvious, the plaintiffs must plead their existence in their complaint with a fair degree of specificity. *Munoz-Mendoza v. Pierce*, 711 F.2d 421 (1st Cir.1983). As the Supreme Court has noted,

If ... the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin, supra*, at 501, 95 S.Ct. at 2206. Plaintiffs attempt to buttress their allegations of injury through use of affida-

---

1. The magistrate found that the injury alleged by the plaintiffs was indirect and that the complaint should have been brought as a derivative action. He therefore dismissed for lack of standing. The court agrees that an alleged undervaluation of stock is an injury to the corporation and, absent a specific duty owed to an individual shareholder, does not give rise to a

personal suit. *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 294 (6th Cir.1983); *cf. Chase National Bank v. Sayles*, 30 F.2d 178, 183 (1st Cir.1927). The court prefers, however, to decide the question of standing in this case on substantive rather than procedural grounds and does not in this respect at this time adopt the magistrate's report and recommendation.

vits submitted in *Citicorp v. The Massachusetts Board of Bank Incorporation*, No. 83–3841C (D.Mass. filed Dec. 7, 1983), in which the plaintiffs attack the constitutionality of the Massachusetts interstate banking act. They point specifically to a statement in the affidavit of Clarke Coggeshall, Vice-president and New England area manager of Citicorp (USA), Inc., that "... some New England bankers believe that, absent the regional restriction provision the shareholders of Massachusetts banks would have more and better offers for their stock..." Affidavit of Clarke Coggeshall at page 3. Further in his affidavit Mr. Coggeshall also states, "Indeed, the stock prices of many Massachusetts, Connecticut and Rhode Island bank holding companies have increased substantially since the enactment of the Massachusetts, Connecticut and Rhode Island Acts, in anticipation of [acquisitions]." Affidavit of Clarke Coggeshall at page 12. Mr. Coggeshall avers that Citicorp is interested in acquiring banks in Connecticut and Massachusetts. An accompanying affidavit made by Daniel A. Saklad, Citicorp's Regional Business Manager, also refers to Citicorp's desire to expand into Massachusetts and Connecticut. Plaintiffs present no evidence of a non-New England institution interested in acquisition of RIHT Co., nor of intent on the part of such a company to expand into Rhode Island. They present no empirical evidence of the value of RIHT Co.'s stock, with or without the enactment of R.I.Gen.Laws Section 19–30–1 and 19–30–2. However, considering the materials most favorably to plaintiffs, the court finds that the averments in the *Citicorp* affidavits can give rise to the inference that a non-New England institution is interested in acquiring companies in Rhode Island as well as in Massachusetts and Connecticut, because of the states' proximity to one another and business relationships that transcend physical boundaries. It might also follow that, as speculated upon by Mr. Coggeshall, a larger pool of potential acquirors would increase the value of RIHT Co.'s stock. In sum, plaintiffs have alleged injury with sufficient specificity to meet the first prong of the standing test. At trial, plaintiffs must prove that they have suffered a distinct and palpable injury. Providing that they leap over the two remaining hurdles to a finding of standing they will be entitled to conduct discovery to buttress their allegations of injury. *Cf. N.A.A.C.P., Boston Chapter v. Harris, supra.*

Defendants also press the argument that plaintiffs' purported injury is not caused by the Rhode Island statute. They argue that any alleged injury is caused by the Douglas amendment, which prevents interstate banking without state statutory approval. Taking this argument to its logical conclusion, they state that the Rhode Island law helps rather than harms plaintiffs in that it has caused the value of RIHT Co.'s stock to rise over pre-interstate banking levels. There is support for this conclusion in the Coggeshall affidavit presented by plaintiffs. While defendants' argument is superficially appealing, it is flawed in that its logic could be applied to any statute limiting interstate banking in any fashion. Its natural corollary would be that a Rhode Island law limiting the scope of interstate banking operates, like the Douglas amendment, as a prohibition and therefore restricts stock prices, causing plaintiffs' injury.

■ The fact that defendants' theory is imperfect does not mean, however, that plaintiffs have prevailed on the causation prong of the standing test. Causation implies a "but for" test; "but for" the enactment of R.I.Gen.Laws Sections 19–30–1 and 19–30–2 the value of plaintiffs' stock would have maintained a higher level. *See N.A.A.C.P., Boston Chapter v. Harris, supra; Women's Medical Center v. Roberts,* 512 F.Supp. 316 (D.R.I.1981); *cf. Warth v. Seldin, supra* at 504, 95 S.Ct. at 2208. Plaintiffs' argument is bottomed on the premise that Rhode Island had a duty, if it allowed interstate banking at all, to allow it without any restrictions and that anything less than this injures plaintiffs by artificially containing stock prices. Without deciding the constitutionality of the challenged

provisions, the court rejects the contention that Rhode Island had a duty to authorize "no holds barred" interstate banking. A crucial factor here is the fact that Rhode Island had no obligation to permit interstate banking. The legislation enacted has had the effect of improving the value of plaintiffs' stock, although apparently not to a level plaintiffs would have preferred. The statute has conveyed a benefit rather than an injury. Plaintiffs have failed to fulfill the second requirement of standing.

Assuming *arguendo* that Rhode Island's failure to allow unfettered interstate banking has worked an injury to plaintiffs, they have failed to show "... that there is 'a substantial likelihood' that the relief requested will redress the injury claimed." *Duke Power, supra* at 75 n. 20, 98 S.Ct. at 2631 n. 20. Plaintiffs argue that the court has three avenues open to it when deciding the constitutionality of the statute: 1) to hold the statute constitutional; 2) to strike down the statute in its entirety; or 3) to expand the statutory scope to allow interstate banking without regional restrictions. They urge that the court take the third route. If the court were able to do this, plaintiffs would have made the requisite showing of redressability. However, the court is faced with a roadblock on the highway to interstate banking around which it can find no detour. The Rhode Island legislature included a non-severability provision in Chapter 201 of the Public Laws.[2] The provision calls for automatic repeal of all but one part of the act if any portion of the statute is found unconstitutional. Section 4, the part not repealed, deals with credit unions and is not pertinent to this litigation. A severability or, in this case non-severability, clause is a guideline for statutory interpretation but not a mandate to the court. *See United States*

*v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). As the court stated in *Jackson,* "... the ultimate determination of severability will rarely turn on the presence or absence of such a clause." *Jackson, supra* at 585 n. 27, 88 S.Ct. at 1218 n. 27. However, the court cannot totally ignore the road sign left by the legislature, although plaintiffs appear to urge just such a construction.

 The provisions of a statute can be extended only if the portion remaining would be operative law and follow legislative intent.

> The unconstitutionality of a part of an Act does not necessarily defeat ... the validity of its remaining provisions. Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.

*Jackson, supra,* at 585, 88 S.Ct. at 1218, citing *Champlin Refining Company v. Corporation Commission of Oklahoma,* 286 U.S. 210, 234, 152 S.Ct. 559, 564, 76 L.Ed. 1062 (1932). Although extension of statutory provisions is usually preferable, the court cannot nullify the intent of the legislature. *See Califano v. Westcott,* 443 U.S. 76, 91, 99 S.Ct. 2655, 2664, 61 L.Ed.2d 382 (1979). A primary consideration is the potential disruption to the statutory scheme if the court were to expand the statute's scope. In *Jackson,* the court struck down 18 U.S.C. Section 1201(a), a portion of the Federal Kidnapping Act which allowed for imposition of the death penalty only in a jury trial. The statute contained no severability clause, but the court, as indicated above, did not consider this crucial. It found the unconstitutional

---

**2.** Chapter 201, Section 5 of the Public Laws of 1983 reads as follows:

Section 5. *Non-Severability.*—In the event that any provision of this act is found unconstitutional by a court of competent jurisdiction and if such finding remains after all appeals therefrom have been exhausted, then all of the provisions of this act except section 4 hereof shall be repealed and the general laws amended or repealed, but such finding shall not invalidate any acquisitions completed in reliance on this act prior to the date when all such appeals have been exhausted. This provision does not appear in R.I.Gen.Laws Sections 19–30–1 or 19–30–2 but is found in the official version of the act. The parties agree that it is a part of the statute.

portion to be severable after determining specifically that the clause was functionally an independent part of the act and that its elimination would not alter the substantive reach or basic operation of the statute.

■ Such a result cannot arise here. Although it is true, as plaintiffs argue, that the legislature envisioned interstate banking with no geographical restrictions at the end of a two-year period, it desired to reach this end through a two-step process. Whatever its motives, and they need not be questioned at this stage of the proceedings, the legislature considered the regional restrictions to be the core of the statute. Rhode Island's statutory scheme was adopted after legislative changes in Maine, Massachusetts and Connecticut. As a reciprocal type of legislation, it must be presumed that the Rhode Island legislature had the prior New England states' statutes in mind when it adopted its plan which represents a course somewhat between that chosen by Maine and that chosen by Massachusetts and Connecticut. Removal of the provisions would completely change the operation of the statutory scheme. It would quite clearly change its substantive reach. The court cannot thwart the intent of the legislature. The legislature had a plan in mind when it enacted the law; this plan cannot be overlooked by the court. The scope of Chapter 201 cannot be expanded by excising the regional limitations and, thus, plaintiffs' alleged injury will not be remedied.

Plaintiffs argue that their injury will be redressed even if the court strikes down the entire statute. The result of such an action would be to revive Rhode Island's complete prohibition against interstate banking. Plaintiffs contend that if no interstate banking were allowed all potential out-of-state acquirors would be treated equally and hence companies headquartered outside New England would no longer be discriminated against. In support of this proposition plaintiffs rely on *Heckler v. Mathews,* —— U.S. ——, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). In that case the plaintiff attacked an exception to the pension offset provision of 42 U.S.C. Section 402, part of the Social Security Act, on the basis of sex discrimination. The Act included a severability clause which would withdraw the benefit of the exception from the included class rather than extend it to excluded persons. Justice Brennan, writing for a unanimous court, stated that where a plaintiff complains of a denial of equal protection, withdrawal of benefits from the beneficiaries of an underinclusive statutory provision will provide relief sought by excluded persons, since the right invoked is that of equal treatment, not higher benefits for the excluded class. He went on to uphold the constitutionality of the statute in question. The approach suggested by the court in *Heckler v. Mathews* is a sensible one in cases involving social benefits. The court is not required to decide whether the logic of *Heckler v. Mathews* applies to the present case, since the cases are completely inapposite. In *Heckler v. Mathews,* the plaintiff claimed that he personally had been discriminated against. Plaintiffs are not in a position to make such a claim here. In no way does the Rhode Island statute single them out for treatment different than that afforded shareholders of other Rhode Island financial institutions. Neither is RIHT Co. itself treated differently from other similarly situated Rhode Island companies.

■ Plaintiffs can raise an equal protection argument under the present circumstances only if they are entitled to assert third party standing on behalf of another potential plaintiff. As a general princical plaintiffs can rarely raise claims of a third party, *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), and courts generally refuse to allow surrogate standing. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). In determining whether *jus tertii* standing is appropriate, the court will consider the relationship of the plaintiff and the third party, as well as the third party's ability to litigate on his own behalf. *Jus tertii* standing will be denied when the third party can easily protect his own interests. *Women's*

*Medical Center v. Roberts, supra.* The court will also look for a direct or indirect effect on rights of others if the plaintiff is refused permission to represent their rights. Plaintiffs have not brought to the court's attention any parties with whom they have such a relationship as to be granted *jus tertii* standing. The court is unable to imagine any such parties, and *jus tertii* standing is not the solution to plaintiffs' woes. In addition to the above, it should be noted that a general interest in equal protection will not provide standing. *See N.A.A.C.P., Boston Chapter v. Harris, supra.* Because plaintiffs have not demonstrated that they are directly discriminated against, they are unable to prevail in their argument that striking down Rhode Island's interstate banking law will remedy plaintiffs' purported injury.

■ In sum, plaintiffs are unable to meet the third test for standing. The relief requested, expanding the statute, is unavailable. The alternative relief of declaring the statute unconstitutional will not remedy their purported injury. Plaintiffs therefore lack standing to prosecute their complaint in this court.

Plaintiffs contend that if they lack standing no one else has standing to challenge the validity of the statute. The court is not convinced that this is the case. Even if plaintiffs' contention is true, however, that fact does not justify conferring standing on the plaintiffs. *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974). Such a theory of standing "would convert standing into a requirement that must be observed only when satisfied." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 489, 102 S.Ct. 752, 767, 70 L.Ed.2d 700 (1982). The lack of a proper plaintiff may indicate that the issue is more appropriately the subject of the legislative rather than the judicial process. *United States v. Richardson,* 418 U.S. 166, 179, 94 S.Ct. 2940, 2947, 41 L.Ed.2d 678 (1974); *Northeast Bancorp*

*Inc. v. Woolf,* 576 F.Supp. 1225 (D.Conn. 1983).

Plaintiffs have also sued the individual directors of RIHT Co. for violations of their fiduciary duty. Because there is not total diversity between the plaintiffs and the defendant directors, there is no independent jurisdictional basis for this claim.

In light of the foregoing analysis, plaintiff's complaint is dismissed with costs. Defendants shall prepare and present a form of order in conformance with this opinion.